FILED
2016 Jul-20  PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **HAZEL B. CHRISTOPHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:15-CV-436-VEH** |
| | ) | |
| **LOGAN'S ROADHOUSE, INC, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants**. | ) | |

---

## <u>MEMORANDUM OPINION</u>

This civil action was originally filed in the Circuit Court of Etowah County, Alabama, on February 6, 2015, by the Plaintiff, Hazel B. Christopher, against the Defendant, Logan's Roadhouse, Inc. ("Logan's"), and various fictitiously named Defendants. (Doc. 1-1). The Complaint contains counts alleging Negligence (Count One), Recklessness and Wantonness (Count Two), "Premises Liability" (Count Three), and Negligent, Reckless, and Wanton Supervision and Training (Count Four).[1] All claims arise out of injuries sustained by the Plaintiff when she slipped and fell in the restroom of one of the Defendant's restaurants in Gadsden, Alabama.

The case is before the Court on the Defendant's Motion for Summary

---

[1] The Complaint also contains a fifth count which adopts all previous allegations and makes a claim solely against the "[f]ictitious party Defendants." (Doc. 1-1 at 12). It is not relevant to the resolution of the issues currently before the Court.

Judgment. (Doc. 15 at 1). For the reasons stated herein, the motion will be **GRANTED**.

## I.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which

are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II.    FACTS

### A.    <u>The Defendant's Proffered Facts Which Were Admitted by the Plaintiff</u>

The following facts, as set out by the Defendant, have been admitted by the

4

Plaintiff:[2]

## Background

1.     Hazel B. Christopher ("Plaintiff") lives in Hodgkins, Illinois.

2.     Plaintiff's claimed incident at Logan's occurred on April 27, 2013.

3.     Thomas Christopher . . . is Plaintiff's son.

4.     Mr. Christopher was with Plaintiff at the Logan's Roadhouse on April 27, 2013.

. . .

## Plaintiff Arrived At The Restaurant And Immediately Used The Restroom

16.     On April 27, 2013, Plaintiff stopped at the Logan's restaurant on Rainbow Drive for dinner with her husband and two sons.

17.     Plaintiff arrived at the restaurant between 4:00 and 6:00.

18.     After arriving at the restaurant, and before being seated, Plaintiff went to use the ladies' restroom.

19.     Plaintiff was in a hurry to use the restroom.

## Plaintiff Fell While Checking The Restroom Stalls

20.     Plaintiff entered the restroom and bent down to look under the door for the handicapped stall.

---

[2]  The Plaintiff specifically disputed _only_ Defendant's proffered facts number 26 and 48. (Doc. 18 at 1-2). Those numbered facts have been omitted from this block quote. Further, facts 5-15, which were immaterial, have been omitted from this quote.

21.     Plaintiff saw feet below the door for the handicapped stall.

22.     Concluding that the handicapped stall was occupied, Plaintiff bent down to look under the doors to the other restroom stalls.

23.     To look under the doors to the stalls, Plaintiff bent down from the waist down.

24.     Plaintiff did not place her hands on anything while bending down.

25.     Plaintiff was holding a purse in her left hand while she checked the stalls.

. . .

27.     Plaintiff fell forward, which resulted in her right arm breaking in two places.

28.     Plaintiff does not remember if she fell face first or to her right or left side.

**Plaintiff Does Not Know What Caused Her Fall**

29.     Plaintiff claims that she fell because her foot became "stuck."

30.     Plaintiff does not remember which foot became stuck:

        Q:      Foot stuck. Was this your right foot or the left foot?

        A:      You know, I don't remember.

([Doc. 16-1 at 14(50)]).

31.     Plaintiff does not know what her foot became stuck on:

        Q:      Do you know what your foot became stuck on?

A:     No, sir.

([Doc. 16-1 at 14(51)])

Q:     Do you know what your foot was stuck on?

A:     Absolutely not.

([Doc. 16-1 at 19(71)]).

32.   Plaintiff did not see anything on the floor causing her foot to become "stuck":

Q:     … You never saw anything on the floor that your foot was stuck on; is that correct?

A:     That's correct.

([Doc. 16-1 at 20(76)]).

33.   Mr. Christopher was not in the ladies' restroom at the time and did not see his mother's fall.

**According to Plaintiff, The Restroom Floor Felt Tacky**

34.   According to Plaintiff, the floor of the ladies' restroom felt tacky.

35.   Mr. Christopher claims that the floor of the ladies' restroom felt tacky and that he noticed some dust on the floor.

36.   Mr. Christopher also claims that he "just kind of felt [the tackiness] as [he] was walking." ([Doc. 16-2 at 8(27)].

**Plaintiff Does Not Know The Source Of The Claimed
"Tacky Feeling" Of The Floor**

37.   Plaintiff cannot state the condition of the floor at the time of her

claimed fall:

> Q:    Okay. And you don't really have any recollection about the condition of the floor, do you?
>
> A:    No, Sir.

(Doc. 16-1 at 20(76)]).

38.    Plaintiff did not see anything on the floor on which her foot became stuck.

39.    Mr. Christopher does not know the source of the claimed "tacky film" on the floor:

> Q:    Okay. Do you know where this film came from?
>
> A:    No, I could not. I couldn't tell you where it came from. . . .

([Doc. 16-2 at 8(27)]).

**Plaintiff Has No Idea How Long The Floor Had Been "Tacky"**

40.    Mr. Christopher does not know how long the floor had been "tacky":

> Q:    Do you know how long the floor had been like that?
>
> A:    No, sir.

([Doc. 16-2 at 8(27-28)]).

**No One Else Fell In The Ladies' Restroom**

41.    Mr. Christopher did not fall while he was in the ladies' restroom.

42.    Mr. Christopher saw a lot of people in the restroom taking care of his mother, but no one fell while doing so.

43.    Plaintiff did not talk to anyone at Logan's regarding the condition of the floor of the ladies' restroom.

44.    Mr. Christopher did not speak to anyone at Logan's regarding the floor of the ladies' restroom.

45.    No one who was with Plaintiff on April 27, 2013 said anything to Logan's about the floor of the ladies' restroom.

**At The Time Of Plaintiff's Incident, Regular Inspections Were Performed Of The Restrooms**

46.    At the time of Plaintiff's injuries, Logan's had a system for regularly checking the cleanliness of its restrooms during business hours.

47.    Logan's employees cleaned the restroom every morning and night.

. . .

49.    Employees were also trained to check the restroom for water, trash, and empty toilet and paper towel rolls whenever they entered the restroom and to report if the restroom was not clean.

50.    Logan's was not aware of any defect with the floor in the ladies' restroom in April 2013.

51.    Logan's did not make any repairs to the floor of the ladies' restroom in April 2013.

52.    Logan's did not receive any complaints of a tacky floor in the women's restroom in April 2013.

(Doc. 17 at 3-10) (citations omitted except where noted) (bold in original).

**B.     The Plaintiff's Proffered Facts Which Were Admitted by the Defendant**

The following facts, as set out by the Plaintiff, have been admitted by the

Defendant:[3]

1.     Plaintiff was wearing New Balance gym shoes at the time of her fall.

2.     After plaintiff fell, she screamed. Her son heard her, and ran into the women's restroom to see what had happened. He was one of the first persons inside the restroom after plaintiff fell.

3.     Shortly after plaintiff fell, paramedics arrived at the restaurant, and came into the restroom to attend to her and place[d] her on top of a stretcher. She was transported to the hospital by ambulance.

4.     Plaintiff's son accompanied her inside the ambulance to the hospital.

(Doc. 18 at 2-3) (citations omitted).

**C.     Other Facts**

Although the Plaintiff was bent over checking the bathroom stalls before she

fell, she was standing up straight when she fell.[4]

The Defendant's employees conducted visual checks of the restrooms every

---

[3]  The Defendant specifically disputed <u>only</u> Plaintiff's proffered fact number 5. (Doc. 19 at 4).  That  numbered fact has been omitted from this block quote.

[4]  *See* document 19 at 4 ("Logan's does not disagree with Plaintiff's characterization of her testimony that she had already stood up when she fell.").

fifteen minutes. (Doc. 16-3 at 3 (Affidavit of Anthony Murphy, the Assistant Bar

Manager at the Logan's Roadhouse where the accident occurred)).[5]

Christopher described the condition of the floor where his mother fell in the

following portion of his deposition:

Q.     Did you inspect the area where your mom fell?

A.     Actually, I did -- I mean, I was looking at it, and I really just didn't
like how it looked, to be honest with you. Because it did feel a little like
-- I don't know if it was a film on it or what.

Q.     Okay. Felt like it had a film on it?

A.     Yeah. Like a --

Q.     Was it a clear film?

A.     I wouldn't describe it as clear.

Q.     All right. But you never spoke to anyone at Logan's and told them
anything about the floor; is that correct?

A.     No, I did not. Like I said, my concern was with my mom.

Q.     Right. When you came in did your mom tell you anything about
what caused her to fall?

A.     She just told me she felt like she got stuck because she was going
to go use the bathroom, and she said when her foot stuck, she just kind

---

[5] The Plaintiff disputes this fact, but cites no evidence to the contrary, except
Christopher's observation of "dust" and a "yellow film on the floor of the women's restroom in
the area where [the] [P]laintiff fell." (Doc. 18 at 2 (citing doc. 16-2 at 9(24)-10(27))).  That
observation does not dispute the evidence that visual checks were actually performed.

of fell over.

Q.     Okay. Other than seeing a film on the floor, did you see anything else?

A.     The floor didn't look very clean. I mean...

Q.     Okay.

A.     I wished I would have took pictures.

Q.     Did you ever call anyone after the accident at Logan's Roadhouse to complain or anything about the condition of the floor?

A.     No, I did not.

Q.     What you told me under oath is that you felt like there might be a film on the floor; is that correct?

A.     Yes.

Q.     And that you didn't feel like -- the floor maybe didn't look very clean, using your words; is that correct?

A.     That's correct.

Q.     And you're talking about the area around where your mother fell; is that right?

A.     Yes.

Q.     And this film on it, did it have color to it?

A.     To me it kind of looked a little like yellowish maybe.

Q.     Okay. Do you know where this film came from?

A.      No, I could not. I couldn't tell you where it came from. I know that, the best way I can describe it to you, is if you've ever been in a bar, and that's kind of how that floor felt to me. Like I said, it just felt a little tacky to me, but nothing -- that's the best I can tell you. Like I said, I didn't think it was very clean.

Q.      All right. So basically the film you're talking about is that you felt it had some tackiness to the floor, right?

A.      Yes, sir.

Q.      And it was a yellow, clearish type tacky?

A.      Yes.

Q.      Do you know how long the floor had been like that?

A.      No, sir.

(Doc. 16-2 at 7(24)-8(27)).

## III.   ANALYSIS

In responding to the Motion for Summary Judgment, the Plaintiff has abandoned all grounds for recovery except her negligence claim in Count One. (Doc. 18 at 1, n.1). "The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009). The Defendant argues that it breached no duty owed to the Plaintiff.

It has been noted:

"The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe

condition." *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1054 (Ala.2003) (internal quotations marks, brackets and citations omitted). As the Alabama Supreme Court has reiterated, " '[t]he storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition.' " *Dolgencorp, Inc. v. Hall*, 890 So.2d 98, 101 (Ala.2003) (quoting *Cash v. Winn–Dixie of Montgomery, Inc.*, 418 So.2d 874, 876 (Ala.1982)). For negligence to attach, the business must have "had or should have had notice of the defect before the time of the accident." *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So.2d 1162, 1164 (Ala.1992) (citation omitted). This is so because " '[t]he entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries." *Fowler v. CEC Entm't*, 921 So.2d 428, 432–33 (Ala.Civ.App.2005) (quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala.2002)). If the business (or one of its employees) creates the dangerous condition, then the business is deemed to have actual notice of it. *Nelson v. Delchamps, Inc.*, 699 So.2d 1259, 1261 (Ala.Civ.App.1997). If . . . there is no evidence that the business has created the dangerous condition, notice can be proved by showing "(1) that the substance slipped upon had been [present] a sufficient length of time to impute constructive notice ...; or (2) that [the business] had actual notice that the substance was [present]; or (3) that [the business] was delinquent in not discovering and removing the substance." *Dunklin v. Winn–Dixie of Montgomery, Inc.*, 595 So.2d 463, 464 (Ala.1992) (quoting *Maddox v. K–Mart Corp.*, 565 So.2d 14, 16 (Ala.1990)). However, if the plaintiff cannot prove notice in any of these ways, then "that superior knowledge [of the business] is lacking, ... [and] the [business] cannot be held liable.' " *Fowler v. CEC Entm't*, 921 So.2d 428, 432–33 (Ala.Civ.App.2005) (quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala.2002)).

*Cook v. Wal-Mart Stores, Inc.*, 795 F. Supp. 2d 1269, 1272-73 (M.D. Ala. 2011)

(Watkins, J.).

In the instant case there is no evidence, and indeed no argument, that the

14

Defendant created the alleged dangerous condition in the restroom. Accordingly, the Plaintiff must show that the Defendant had notice of the condition by showing: 1) that the substance slipped upon had been present a sufficient length of time to impute constructive notice; or 2) that the Defendant had actual notice that the substance was present; or 3) that the Defendant was delinquent in not discovering and removing the substance.

Although she sets them out in her brief (doc. 18 at 4), the Plaintiff fails to argue the applicability of any of the three methods of proving notice. Instead, she discusses the Alabama Supreme Court's decision in *Maddox v. K-Mart Corp.*, 565 So. 2d 14 (Ala. 1990), and then compares the facts of the instant case to that case.[6] *Maddox*,

_____

[6] After her discussion of the facts and holding of *Maddox*, the Plaintiff merely writes:

> Similarly, in the present case, plaintiff fell and suffered serious injuries after her heel became "stuck" on a "tacky" substance on the floor of the Logan's Roadhouse restroom. *See* doc. no. 16-1, at 73-74. She was accompanied by her son. She did not see the substance prior to her fall. Both plaintiff and her son testified that the floor in the ladies' restroom contained a "tacky," or sticky, substance. Under those facts, the Alabama Supreme Court would hold that plaintiff has presented enough evidence to have her case heard by a jury. *See Maddox*, 565 So. 2d at 17.

(Doc. 18 at 6).

In *Maddox*, the court held that there was enough evidence to determine that constructive notice was imputed to the Defendant and that the Defendant was delinquent in not discovering and removing the substance. *Maddox*, 565 So. 2d at 16-17.  Since *Maddox* is the principal case cited by the Plaintiff, the Court <u>could</u> assume that the Plaintiff is arguing the same basis for imputing notice here. However, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments[.]" *Resolution Trust Corp.*, 43 F.3d

however is distinguishable on its facts. Further, it applied the now-abrogated "scintilla" of evidence standard.[7]

In *Maddox*,

> Upon entering [a K-Mart] store, [James Michael Maddox] slipped and fell near the front customer service desk and, as a result, suffered injuries to his head, neck, and back. . . . James Michael and his sister [who, along with Maddox's mother, was present at the time of the fall] testified that after his fall they observed a substance on the floor near the customer service desk where he had fallen. They did not see the substance on the floor before his fall. His sister stated in her deposition that she thought that the substance was wet, slippery, and "sticky," and that it appeared to her to be a puddle of "Coke." She also stated that the substance "looked like it was trying to dry" and that the puddle was about two feet wide. He, his mother, and his sister also testified that there was a sticky substance found on his clothes and on his hand after the fall. His mother said the substance on his clothes dried "stiff." Neither he nor his mother or sister knew how long the substance had been on the floor.

*Maddox*, 565 So. 2d at 15-16. The Alabama Supreme Court, held:

> [W]e find that there was at least a scintilla of evidence that the substance had been on the floor for such a length of time that constructive notice was imputed to K–Mart and that K–Mart was delinquent in not discovering and removing the substance. The testimony that the substance looked like a puddle of "Coke" and was "sticky" and "looked like it was trying to dry" provided evidence from which the trier of fact could infer that the substance had been there long enough that the defendant's employees should have known it was there. . . . [I]t is

at 599. Accordingly, summary judgment is appropriate here because the Plaintiff fails to explain her basis for imputing notice to the Defendant. Regardless, as explained herein, there is insufficient evidence to support any of the three possible bases for imputing notice.

[7] See footnote 8, *infra*.

permissible to allow the trier of fact to infer the length of time that the substance had remained on the floor from evidence regarding the nature and condition of the substance. "Where the substance is dirty, crumpled, or mashed, or has some other characteristic [, e.g., is 'sticky,'] that makes it reasonable to infer that it has been on the floor a long time, the defendant may be found to have a duty to discover and remove it." [*Vargo v. Warehouse Groceries Management, Inc.,* 529 So.2d 986 (Ala.1988)], *citing S.H. Kress & Co. v. Thompson*, 267 Ala. 566, 103 So.2d 171 (1957). Therefore, we conclude that the plaintiffs presented enough evidence that any inference that K–Mart was negligent would not be the result of mere speculation.

*Id.* at 16-17 (emphasis added).

Importantly, in *Maddox*, the Alabama Supreme Court also distinguished its decision in *Vargo v. Warehouse Groceries Management, Inc.,* 529 So.2d 986 (Ala.1988), writing:

We find *Vargo, supra*, distinguishable from the present case. In *Vargo*, the plaintiff slipped and fell after removing a bag of ice from an ice machine. The plaintiff and her witness testified that there were several puddles of water in front of the ice machine and that the water "looked like it had been there for a while." An employee for Warehouse Groceries Management testified that after the accident he did not observe any water or any evidence of a fall. This Court held:"Based on the evidence in the instant case, any inference that Warehouse Groceries was negligent would be the result of mere speculation. Therefore, it was not error for the trial court to grant summary judgment in favor of Warehouse Groceries."529 So.2d at 987.

*Maddox*, 565 So. 2d at 16. The court continued:

In *Vargo*, there was no evidence about the nature of the substance from which the trier of fact could infer that the substance had been on the floor for such a length of time that constructive notice should be

17

imputed to the defendant.

*Id.* at 17.

The facts of the instant case are closer to *Vargo* than *Maddox*. Here, like in *Vargo,* there is no evidence as to the nature of the substance which allegedly caused the Plaintiff to fall–just that the floor felt "tacky." It is undisputed that:

– The Plaintiff does not know what her foot became "stuck" on.

– The Plaintiff did not see anything on the floor causing her foot to become "stuck."

– The Plaintiff cannot state the condition of the floor at the time of her claimed fall.

– Christopher was not in the ladies' restroom at the time and did not see his mother's fall.

– Christopher does not know the source of the "tacky film" on the floor.

– Christopher does not know how long the floor had been "tacky."

Based on these facts, any inference that the alleged substance had been there long enough to impute constructive knowledge to the Defendant would be pure speculation.[8] *See, Cummings v. Target Stores, Inc.*, No. 2:12-CV-2798-JHH, 2014

---

[8] Also, as noted, in *Maddox*, the Alabama Supreme Court determined that "there was at least a <u>scintilla</u> of evidence that the substance had been on the floor for such a length of time that constructive notice was imputed to K–Mart and that K–Mart was delinquent in not discovering

WL 3889953, at *6 (N.D. Ala. Aug. 5, 2014) (Hancock, J.) ("The problem for Plaintiff is that her argument for Target's constructive notice of the spill is mere conjecture that cannot create a material dispute of fact. She admits that she has no knowledge of how long the liquid might have been on the floor and she admits that she merely 'assumed' that the liquid came from the ice dispenser.").

> Also, the evidence is uncontroverted that:
>
> – The Defendant's employees cleaned the restroom every morning and night.
>
> – The Defendant's employees conducted visual checks of the restrooms every fifteen minutes.
>
> – The Defendant's employees were also trained to check the restroom for water, trash, and empty toilet and paper towel rolls whenever they entered the restroom and to report if the restroom was not clean.

The Plaintiff has presented no evidence that this procedure was inadequate or performed inadequately on the day of her fall. Accordingly, there is no evidence that the Defendant was delinquent in not discovering and removing the substance. *See*, *Hale v. Kroger Ltd. P'ship I*, 28 So. 3d 772, 783 (Ala. Civ. App. 2009) ("Hale has not

---

and removing the substance." *Maddox*, 565 So. 2d at 16 (emphasis added).  As noted in *Hale*, "*Maddox* involved an incident that occurred on November 29, 1985. Effective June 11, 1987, the scintilla rule was abolished in favor of the substantial-evidence rule. See § 12-21-12, Ala.Code 1975."  *Hale*, 28 So. 3d at 781, n. 1.  Accordingly, it is unclear if the Alabama Supreme Court would decide *Maddox* the same way today.

presented any evidence to indicate that Kroger's sweep/spot mop inspection procedure was inadequate or that it was performed inadequately on the day of his fall. Without such evidence, he has failed to present a genuine issue of material fact regarding Kroger's alleged delinquency in failing to discover and remove the baby-food spill."); *Richardson v. Kroger Co.*, 521 So. 2d 934, 936 (Ala. 1988) (plaintiff failed to counter sworn statements indicating that neither the defendant nor its employees were delinquent in failing to discover and remove the dangerous condition).

Finally, there is no evidence, or argument, that the Defendant had actual knowledge of the alleged substance which caused the Plaintiff to fall. Indeed, the evidence is uncontroverted that:

– The Defendant was not aware of any defect with the floor in the ladies' restroom in April 2013.

– The Defendant did not make any repairs to the floor of the ladies' restroom in April 2013.

– The Defendant did not receive any complaints of a "tacky" floor in the women's restroom in April 2013.

## IV.   CONCLUSION

Because, in this case, "the superior knowledge is lacking . . . the [Defendant]

cannot be held liable." *Fowler*, 921 So. 2d at 432-33 (internal quotations and citations omitted). By separate order, the Defendant's Motion for Summary Judgment will be **GRANTED**, and this case will be **DISMISSED with prejudice**.

   **DONE** and **ORDERED** this 20th day of July, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge